IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

      vs.                 **Case No. 12-40043-02-RDR**

JOSE LUIS OSORIEO-TORRES

        Defendant.

<u>**MEMORANDUM AND ORDER**</u>

This matter is presently before the court upon several pretrial motions filed by the defendant. The court has held a hearing on the motions and is now prepared to rule.

The defendant was originally charged with co-defendant Javier Vazquez-Hernandez in a two-count indictment. Both defendants were charged with (1) conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Prior to the court's hearing on the pretrial motions, defendant Vazquez-Hernandez advised the court of his intention to enter a guilty plea. The court proceeded to hear and consider the motions filed by defendant Osorieo-Torres. Following the hearing, defendant Vazquez-Hernandez did enter a guilty plea.

The charges arise out of a search of a residence in Chapman, Kansas and a traffic stop of a truck in which the defendants were passengers. Defendant Osorieo-Torres has filed the following motions: (1) motion to suppress fruits of his illegal seizure; (2) motion to suppress fruits of search warrant and for <u>Franks</u> hearing;

and (3) motion for order to compel.  He also filed a post-hearing memorandum in support of his motion to suppress.

MOTION TO SUPPRESS FRUITS OF ILLEGAL SEIZURE

Osorieo-Torres contends that the truck in which he was a passenger was unlawfully stopped and searched.  He asserts that law enforcement did not have reasonable suspicion or probable cause to believe that he was committing a crime when the truck was stopped. He argues that the police did not have reasonable suspicion or probable cause to suspect him of committing a crime, even though they had received information from confidential informants, because (1) the informants did not provide enough information to identify him; (2) the information from the informants did not match the observations made by law enforcement; and (3) the informants were unreliable.

The government has responded that the totality of the circumstances indicate that law enforcement had reasonable suspicion and/or probable cause to stop the vehicle in which the defendant was a passenger.  The government suggests without much elaboration that the officers had reasonable suspicion and/or probable cause that the vehicle's occupants had delivered drugs. In a subsequent response, the government suggests that Osorieo-Torres did not have standing to contest a search of the vehicle because he has not demonstrated a possessory or property interest in the truck.

Based upon the evidence presented at the hearing, the court makes the following findings of fact and conclusions of law.

2

*Findings of Fact*

On November 21, 2011, Brett Gering, an investigator with the Dickinson County Sheriff's Department, received information from Sgt. Godfrey of the Geary County Drug Enforcement Unit.  Sgt. Godfrey had arrested Mr. Glenn Decker for possession of narcotics and drug paraphernalia.  Sgt. Godfrey told Inv. Gering that Mr. Decker was a prior drug user who had been clean for awhile but had started using again.  Mr. Decker said he had met a man who went by the street name of "Cross" in a bar in Junction City, Kansas.  Mr. Decker said Cross had indicated that he should give him a call anytime he needed methamphetamine.  Mr. Decker said he bought methamphetamine outside Cross' residence at 2617 Quail Road in Dickinson County.  He further said that Cross drove a silver Lincoln Navigator.  Sgt. Godfrey told Inv. Gering that he was going to sign Mr. Decker as a confidential informant.  In December 2011, Sgt. Godfrey told Inv. Gering that Mr. Decker was not meeting his obligations.  Sgt. Godfrey advised Inv. Gering that Geary County would be filing charges against Mr. Decker.  Inv. Gering was unaware of why Mr. Decker was not meeting his obligations.

On November 23, 2011, Sgt. Dan Owsley, a police officer with the Lenexa Police Department, contacted Lt. Gregg Swanson, a sheriff's deputy with Dickinson County Sheriff's Department, about information he had received from a confidential informant about the sale of methamphetamine in Chapman, Kansas.  Chapman is located in Dickinson County.  This confidential informant, who was later identified as Lori Haros, had been stopped by law enforcement on

October 28, 2011 for a traffic violation and methamphetamine had been discovered in her vehicle.   After her arrest, she agreed to cooperate and provide information to law enforcement on October 30, 2011.   She indicated that on October 28th she had traveled to Chapman with Gomercio Hunner, a Hispanic male, to deliver 7 ounces of methamphetamine to a woman named "Judy."   She said that they drove to Chapman in a black Ford pickup truck and that the methamphetamine was hidden in a styrofoam cup in the bed of the truck.   She further indicated that Judy lived with her father in a small apartment.   She described the location of the apartment.   She also provided a phone number for Judy and said that Judy drove a black Lincoln Navigator.   She noted that Judy was on parole for prior drug charges.   Ms. Haros said that methamphetamine was delivered to Judy every few days.   In providing the information to Lt. Swanson, Sgt. Owsley did not identify the confidential informant.

Sgt. Owsley had received additional information on Lori Haros, both from her and about her, but he did not provide this information to Lt. Swanson.   For example, Ms. Haros had told Sgt. Owsley that she rode to Chapman in a black Ford truck.   She later discovered that the individuals who were delivering the methamphetamine to Ms. Beal in Chapman were driving a brown or green truck, not a black one.   Sgt. Owsley was aware that Ms. Haros had two prior drug convictions.   He had planned on using Ms. Haros as an informant but ultimately chose not to do so because Ms. Haros was unable to come to the police station due to her lack of

transportation.  The charges against her in Johnson County were not ultimately dismissed until the search warrant was sought in Dickinson County.  Prior to that time, a warrant had been issued for the arrest of Mr. Haros.

In December or January 2012, members of the Geary County Drug Task Force provided additional information that they had gathered from Mr. Decker.  Mr. Decker indicated that a woman named Judith Beal was involved in the methamphetamine business.  Mr. Decker had told them that two Hispanic males from Kansas City, Kansas would bring methamphetamine to Ms. Beal at 1101 Killarney Circle in Chapman in a Ford truck, but the model and year were unknown. He said that the methamphetamine was in a spare tire or something in the bed of the truck and two Hispanic males would take it inside the residence.

At the time Sgt. Swanson received the aforementioned information, he was working on another case.  He began to investigate in earnest the information provided by the confidential informants in January 2012.  After a discussion with a local parole officer, he learned that Judith Beal, who resided in Chapman, was on parole for a prior conviction in Colorado.  He found out that Ms. Beal lived at 2617 Quail Road, Lot 18 in Chapman.  He also learned that she lived with her father in Chapman at 1101 Killarney Circle, an assisted living residence associated with a Chapman nursing home.  He discovered that Ms. Beal listed her occupation as a health care provider to her father, Burton Lusenhop.  He later found out that Ms. Beal's father owned a silver Lincoln Navigator.

Finally, he learned that "Cross" was Ms. Beal's son, Tyler Morgan Lusenhop.

On January 23, 2012, Lt. Swanson and Inv. Gering began video surveillance of 1101 Killarney Circle.  Inv. Gering saw Ms. Beal come and go from the house several times in a silver Lincoln Navigator.  A Dodge truck and Lincoln Town Car made briefs stops at the residence.  He also observed someone walk to the house, talk to Ms. Beal, and then leave.

On January 24, 2012, Inv. Gering saw Ms. Beal and an unknown male come and go from the house.  An unknown driver of a Lincoln Town Car also visited briefly.  A few minutes later the Lincoln Navigator left the residence and was seen with the Lincoln Town Car at a Casey's General Store.  Lt. Swanson and Inv. Gering believed the activity in and out of the residence at 1101 Killarney Circle was consistent with drug sales.

On January 25, 2012, Inv. Gering saw a green Ford F150 truck arrive at the residence.  The truck was registered to Ramon Molina of Kansas City, Kansas.  Two Hispanic males sat in the truck for four minutes until the garage door opened. They then entered the house through a garage door.  The garage door closed behind them.  Twenty-five minutes later, the garage door opened and the driver retrieved a tool box from the bed of the truck and went back inside the house.  The garage door closed again.  Thirty minutes later, the two Hispanic men, an unknown white male, and Ms. Beal exited the garage.  Ms. Beal hugged the truck passenger.  The driver put the tool box in the bed of the truck, and the two men left.

At 11:28 a.m., Inv. Gering stopped the green Ford truck. Neither the driver, Vazquez-Hernandez, nor the passenger, Osorieo-Torres, had a driver's license.  The occupants were then arrested. The truck was impounded while a search warrant was sought.

Ms. Beal left her residence in the Lincoln Navigator at 2:48 p.m.  She was arrested.  Her residence and vehicle were secured until search warrants could be obtained.

Search warrants were ultimately obtained for the residence on Killarney Circle, the Lincoln Navigator, and the Ford truck.  A search of the residence found trace amounts of methamphetamine, a syringe, and "owe sheets."  Nine bags of methamphetamine were found in the Lincoln Navigator.  A search of the Ford truck revealed $18,0875 in cash in a cardboard box in the tool box.

Following his arrest, the defendant was questioned by law enforcement officers.  He did not waive his right to remain silent.

*Conclusions of Law*

**Standing**

The court shall initially consider the arguments of the government concerning standing to challenge the constitutionality of the search of the truck.  As noted previously, the government contends that Osorieo-Torres lacks standing because he failed to show a possessory or property interest in the truck.

"Fourth Amendment rights are personal, and, therefore, a defendant cannot claim a violation of his Fourth Amendment rights based only on the introduction of evidence procured through an illegal search and seizure of a third person's property or

7

premises." <u>United States v. DeLuca</u>, 269 F.3d 1128, 1131 (10th Cir. 2001)(quoting <u>United States v. Erwin</u>, 875 F.2d 268, 270 (10th Cir. 1989))(internal quotation marks omitted).  During a traffic stop, a passenger is "seized" for Fourth Amendment purposes and thus has standing to challenge the validity of the stop at issue.  <u>Brendlin v. California</u>, 551 U.S. 249, 251 (2007).  However, the passenger's right to contest a subsequent search not of his person but the vehicle remains subject to analysis under <u>Rakas v. Illinois</u>, 439 U.S. 128 (1978).  <u>United States v. Cortez-Galaviz</u>, 495 F.3d 1203, 1206 (10th Cir. 2007).  In <u>Rakas</u>, the Supreme Court held that a passenger who asserts neither a possessory nor a property interest in a vehicle "would not normally have legitimate expectation of privacy" in the vehicle protected by the Fourth Amendment.  <u>Rakas</u>, 439 U.S. at 148-49.  Osorieo-Torres was a passenger in the truck and does not assert any possessory or property interest in it.  Thus, the government's argument that he lacks standing to challenge the vehicle search has merit.  Osorieo-Torres does, however, have standing to challenge the stop as well as his own detention.

**Lawfulness of the Stop of the Truck**

The Fourth Amendment protects individuals from "unreasonable searches and seizures," U.S. Const. amend. IV, including unreasonable "investigatory stop[s]" or detentions.  <u>United States v. Simpson</u>, 609 F.3d 1140, 1146 (10th Cir. 2010).  In <u>Terry v. Ohio</u>, the Supreme Court established that a law enforcement officer "may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior

even though there is no probable cause to arrest." United States
v. Treto-Haro, 287 F.3d 1000, 1004 (10th Cir. 2002) (quoting Terry
v. Ohio, 392 U.S. 1, 22 (1968)) (internal quotation marks omitted).
An investigatory detention "is justified at its inception if 'the
specific and articulable facts and rational inferences drawn from
those facts give rise to a reasonable suspicion a person has or is
committing a crime.'" United States v. DeJear, 552 F.3d 1196, 1200
(10th Cir.) (quoting United States v. Werking, 915 F.2d 1404, 1407
(10th Cir. 1990)), cert. denied, 129 S.Ct. 2418 (2009); see also
United States v. Sokolow, 490 U.S. 1, 7 (1989) ("[T]he police can
stop and briefly detain a person for investigative purposes if the
officer has a reasonable suspicion . . . that criminal activity
'may be afoot,' even if the officer lacks probable cause." (quoting
Terry, 392 U.S. at 30)). Although "[r]easonable suspicion requires
the officer to act on 'something more than an inchoate and
unparticularized suspicion or hunch,'" United States v. Hauk, 412
F.3d 1179, 1186 (10th Cir. 2005) (quoting Sokolow, 490 U.S. at 7),
"the level of suspicion required for reasonable suspicion is
'considerably less' than proof by a preponderance of the evidence
or that required for probable cause." United States v. Lopez, 518
F.3d 790, 799 (10th Cir. 2008) (quoting Sokolow, 490 U.S. at 7).

In determining whether reasonable suspicion exists, the court
looks to the "totality of the circumstances," rather than assessing
each factor or piece of evidence in isolation. United States v.
Salazar, 609 F.3d 1059, 1068 (10th Cir. 2010). Additionally, we
"need not rule out the possibility of innocent conduct," United

States v. Arvizu, 534 U.S. 266, 277 (2002), and reasonable suspicion may exist "even if it is more likely than not that the individual is not involved in any illegality." United States v. Albert, 579 F.3d 1188, 1197 (10th Cir. 2009) (quoting United States v. Johnson, 364 F.3d 1185, 1194 (10th Cir. 2004))(internal quotation marks omitted). "All reasonable suspicion requires is 'some minimal level of objective justification.'" Id.(quoting Sokolow, 490 U.S. at 7).

Furthermore, when determining if a detention is supported by reasonable suspicion, we "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." United States v. Zubia-Melendez, 263 F.3d 1155, 1162 (10th Cir. 2001) (internal quotation marks omitted). We "judge the officer's conduct in light of common sense and ordinary human experience," United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997), and "we consider the reasonableness of an officer's actions using an 'objective standard.'" United States v. Winder, 557 F.3d 1129, 1134 (10th Cir.) (quoting United States v. Sanchez, 519 F.3d 1208, 1213 (10th Cir. 2008)), cert. denied, 129 S.Ct. 2881 (2009). The detaining officer's "'subjective beliefs and intentions' are, quite simply, irrelevant." Id. (quoting United States v. DeGasso, 369 F.3d 1139, 1143 (10th Cir. 2004)). Under this objective standard, we ask "whether 'the facts available' to the detaining officer, at the time, warranted an officer of 'reasonable caution' in believing 'the action taken was appropriate.'" Id.(quoting Terry, 392 U.S. at 21-22). In making this determination, the court

must consider the information possessed by law enforcement and its reliability. <u>See</u> <u>Alabama v. White</u>, 496 U.S. 325, 330 (1990).  Both factors are assessed under the totality of the circumstances.  <u>Id</u>. When the officer has stopped a person based on reasonable suspicion of criminal activity, the officer may briefly detain the individual "in order to determine his identity or to maintain the status quo momentarily while obtaining more information." <u>Adams v. Williams</u>, 407 U.S. 143, 146 (1972).

The defendant contends that the information provided by the confidential informants was unreliable and that, therefore, it did not provide a sufficient basis for the officers to conclude that reasonable suspicion or probable cause existed.  In determining whether a confidential source's information is reliable, the court can consider the following: (1) whether the identity of the informant is known to the officers, <u>see</u> <u>United States v. Brown</u>, 496 F.3d 1070, 1074-75 (10th Cir. 2007)(stating that "where informants are known. . ., a lesser degree of corroboration is required"); <u>United States v. Jenkins</u>, 313 F.3d 549 , 554 (10th Cir. 2002)(when the identity of informant is known to officers, he can be held "responsible if his allegations turned out to be fabricated"); (2) whether the informant had previously provided information that was found to be accurate, <u>see</u> <u>United States v. Leos-Quijada</u>, 107 F.3d 786, 792-93 (10th Cir. 1997)(informant was reliable based on law enforcement officer's testimony that informant had previously been a source and had provided accurate information); (3)  whether the information provided was a first-hand observation by the informant,

11

see <u>Jenkins</u>, 313 F.3d at 554-55 ("Another relevant factor is that the informant claimed to have personally witnessed the defendant's drug transactions and provided a detailed description of how those transactions were carried out."); (4) the degree of detail provided, <u>id</u>; (5) whether the informant admitted to his/her own criminal activity, <u>see</u> <u>United States v. Harris</u>, 403 U.S. 573, 583, (1971)("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility--sufficient at least to support a finding of probable cause to search."); (6) whether the information came from multiple informants, <u>see</u> <u>United States v. Mathis</u>, 357 F.3d 1200, 1206 (10th Cir. 2004)(affirming district court's finding of probable cause based in part on fact that "the information provided by the informants was internally corroborated in several respects"); <u>United States v. Spry</u>, 190 F.3d 829, 836 (7th Cir. 1999)(concluding that the district court's finding of probable cause was supported in part by the fact that "multiple confidential informants provided corroborating information"); and (7) whether the informant's information was corroborated by an officer's independent investigation, <u>see</u> <u>United States v. Danhauer</u>, 229 F.3d 1002, 1006 (10th Cir. 2000)("When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."); <u>Leos-Quijada</u>, 107 F.3d at 793(corroboration by law enforcement officer's of certain details of confidential informant's tip provides support for conclusion that tip was reliable). No one factor is dispositive, however. Each is simply

a relevant consideration in the totality of circumstances analysis. See Illinois v. Gates, 462 U.S. 213, 233 (1983). Therefore, a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability. Id.

The defendant has focused almost entirely on the fact that there is little in the record to establish that either of the informants had previously provided any information that was found to be truthful. The defendant has also suggested several other reasons why the informants should not be deemed reliable: (1) the information offered by the informants was stale; (2) the informants offered inconsistent information; and (3) the officers observed details during the surveillance that were inconsistent with the information offered by the informants.

The parties spent considerable time during the hearing trying to support their position on whether the informants had previously provided information that was found to be truthful. During his direct examination, Lt. Swanson testified that Sgt. Owsley of the Lenexa Police Department had told him that Ms. Haros was a reliable person who had provided reliable information in the past. He also indicated that Sgt. Godfrey of the Geary County Drug Enforcement Unit had told him that Mr. Decker was a reliable person. However, on cross-examination, Lt. Swanson testified that he did not specifically recall if Sgt. Owsley or Sgt. Godfrey had made any statements concerning the reliability of their informants. Inv. Gering testified that he came to believe that the information provided by Sgt. Godfrey from Mr. Decker was reliable because of

his past dealings with Sgt. Godfrey.

In general, the court agrees with the defendant that there has been very little showing of the reliability of the informants, at least based upon their prior use. There was some evidence offered of reliability, but no specifics were offered. In addition, the testimony that was offered was equivocal on the reliability of the informants and the knowledge of that reliability. Thus, the court does not finds that this factor provides much support for a determination of the reliability of the informants. However, the other factors do provide an indicia of reliability, despite the defendant's arguments to the contrary.

Initially, the court notes these two informants were not anonymous. They were both known to law enforcement at the time the information was provided. This means that both could be held responsible if their allegations turned out to be fabricated. Thus, this factor weighs in favor of the reliability of the informants.

Moreover, both informants admitted to their own criminal activity. Mr. Decker admitted that he had purchased methamphetamine from Ms. Beal's son outside Ms. Beal's residence. Ms. Haros acknowledged that she had delivered methamphetamine to Ms. Beal in Chapman for later sale. The fact that an informant has made a statement against penal interest enhances credibility.

The information gained from Ms. Haros contained the basis of her knowledge. She had ridden to Ms. Beal's place in Chapman and had personally observed the drug sale. She provided the name of

the individual who made the trip with her and other details which suggested reliability.  She displayed first-hand knowledge of the drug conspiracy.  "A specific, first-hand account of possible criminal activity is a hallmark of a credible tip."  United States v. Greenburg, 410 F.3d 63, 67 (1st Cir. 2005).  The information provided by Mr. Decker does not support a finding of reliability. The officers appeared to have no knowledge of how Mr. Decker learned about the transportation of methamphetamine from Kansas City to Chapman by Hispanic males.  The information could have been second-hand.  In addition, the court agrees with the defendant that the information provided by the informants was somewhat stale.  The court, however, is persuaded that other factors demonstrate the reliability of the information.

Next, the court notes that the information provided by Mr. Decker and Ms. Haros corroborated each other.  Both provided that Hispanics were bringing methamphetamine to Ms. Beal for distribution.  Ms. Haros did indicate that it was one Hispanic male and Mr. Decker indicated that it was two Hispanic males. Nevertheless, by telling consistent, yet independent stories, the informants provide cross-corroboration.  See United States v. Schaefer, 87 F.3d 562, 566 (1st Cir. 1996)("[C]onsistency between the reports of two independent informants helps to validate both accounts.").  The court is not persuaded that the minor inconsistencies in the informants' reports is fatal to consideration of their information.  See Gates, 462 U.S. at 245 n. 14("We have never required that informants used by police be

15

infallible."). Some inaccuracies will not undermine the probative value of the information as a whole if other indicia of reliability are present. Thus, although the officers were unaware of whether Mr. Decker's information was first-hand, it was corroborated by information provided by Ms. Haros.

Finally, the court considers the corroboration of the information provided by the informants by law enforcement. This is certainly an important aspect of the court's decision. Where an informant's tips are concerned, the task turns in large part on independent police work corroborating the details of the informant's charge. In some circumstances, it may be enough that law enforcement officers confirm the tip's innocent details, for "seemingly innocent activity [may become] suspicious in light of the initial tip." <u>Gates</u>, 462 U.S. at 243 n. 13.

The court notes that law enforcement corroborated much of the information provided by the informants. They were able to corroborate the following: (1) Judy was "Judith Beal;" (2) the telephone number provided matched that of Judith Beal; (3) Ms. Beal had a residence at 2617 Quail Road; (4) she also lived with and helped her father at an assisted living facility at 1101 Killarney Circle; (6) her father owned a silver Lincoln Navigator that she drove; (7) Ms. Beal had a prior drug conviction and was on parole; (7) "Cross" was Ms. Beal's son, Tyler Lusenhop; (8) drug activity appeared to be occurring at the assisted living facility; (9) they observed a Ford truck registered to an owner in Kansas City, Kansas driven by two Hispanics arrive at 1101 Killarney Circle; (10) they

saw one of the Hispanics go to back of the truck, retrieve something, and then enter the house; and (11) they further observed one of the Hispanic males return something to the back fo the truck before leaving.

The officers were able to corroborate several unremarkable details, some important details, and some predictive behavior. Law enforcement was not able to corroborate all of the informants' information. The defendant has suggested that some of the details provided by the informants were inaccurate, contradictory or contrary to what the officers observed during the surveillance. Nevertheless, the surveillance produced enough to demonstrate the reliability of the informants' information. The surveillance provided corroboration that Ms. Beal was dealing in drugs. The fact that a Ford truck arrived at the Killarney Circle residence with two Hispanic males in it further substantiated the reports provided by the informants. Where an informant's information has been "corrobrated in material respects, the entire account may be credited, including parts without corroboration." <u>United States v. Canfield</u>, 212 F.3d 713, 720 (2nd Cir. 2000). The information provided was bolstered by the details provided. The details related to the future actions of third parties, which are "ordinarily not easily predicted." <u>Id</u>. at 245. Access to such information demonstrates a likelihood that the informant had obtained the information from personal observation or from the defendant or from someone he trusted. <u>Id</u>. at 246.

In sum, the court finds, based upon a totality of the

circumstances, that the officers had reasonable suspicion to stop the truck in which the defendant was a passenger. The court recognizes that not all of the factors demonstrate reliability of these informants. But the court does find that the weight of the evidence shows sufficient reliability. Following the stop, the officers learned that neither occupant had a valid driver's license. At this point, the truck could be impounded pursuant to department policy or held for search based upon a search warrant.

**Lawfulness of the Arrest of the Defendant**

The court next turns to the issue of whether there was probable cause to arrest the defendant. This is a much closer question. "To be reasonable under the Fourth Amendment, an arrest must be supported by probable cause." United States v. Traxler, 477 F.3d 1243, 1246 (10th Cir.), cert. denied, 522 U.S. 909 (2007). "The. . .standard of probable cause protects citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime, while giving fair leeway for enforcing the law in the community's protection." Maryland v. Pringle, 540 U.S. 366, 370 (2003)(internal quotations omitted). Reduced to its essence, "probable cause is a reasonable ground for belief of guilt." Id. at 371. It "exists when under the totality of the circumstances there is a reasonable probability that a crime is being committed." Traxler, 477 F.3d at 1247.

The problem here in determining whether there was probable cause to arrest the defendant is that neither informant provided information related to the defendant. The informants provided

information that indicated that Ms. Beal was selling methamphetamine from certain locations in Chapman. They further provided information that Hispanic males were making deliveries of methamphetamine to Ms. Beal in Chapman. The officers were able to corroborate much of the information provided by the informants. The totality of the circumstances, as previously noted, provided reasonable suspicion for the officers to stop the vehicle in which Vazquez-Hernandez and Osorieo-Torres were occupants. However, the court is not persuaded that this evidence provided probable cause to arrest Osorieo-Torres. The government provided no additional evidence that was discovered prior to the arrest. The government did eventually discover evidence that would have provided probable cause for the arrest of the defendant, but they did not have it at the time that the arrest occurred. With this decision, the court must determine if the evidence discovered in the truck must be suppressed.

**Lawfulness of the Suppression of the Evidence in the Truck**

To suppress evidence as the fruit of his unlawful detention, Ororieo-Torres must make two showings: (1) that the detention did violate his Fourth Amendment rights; and (2) that there is a factual nexus between the illegality and the challenged evidence. DeLuca, 269 F.3d at 1132. Evidence will not be suppressed as fruit of the poisonous tree unless an unlawful search is at least the but-for cause of its discovery. Hudson v. Michigan, 547 U.S. 586, 592 (2006). Even then, causation is often so attenuated that suppression is not justified. Id.; Wong Sun v. United States, 371

19

U.S. 471, 487-88 (1963).  The but-for relationship has been described as a "factual nexus between the illegality and the challenged evidence."  United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000).  To establish the factual nexus, at a minimum, "a defendant must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct." Id.

The court is unable to conclude that the evidence that was subsequently discovered was the fruit of the illegal detention of the defendant.  The defendant had to show that the evidence would never have been discovered but for his, and only his, unlawful detention.  The government need only show that the evidence was not the fruit of the defendant's illegal detention.  Here, the truck would have been impounded and inventoried or held for a subsequent search warrant regardless of the defendant's detention.  Neither the driver nor the defendant possessed a valid driver's license. The subsequent search would have uncovered the money found in the cardboard box in the tool box.  Having found a lack of a taint by the Fourth Amendment violation, the court must deny the defendant's motion to suppress.

MOTION TO SUPPRESS FRUITS OF SEARCH WARRANT AND FOR FRANKS HEARING

In this motion, the defendant argues that court should suppress the evidence seized from the truck because the affidavit filed in support of the search warrant contained false information, in violation of Franks v. Delaware, 438 U.S. 154 (1978), without

20

which the warrant would never have issued.  The defendant seeks a
<u>Franks</u> hearing to prove his contentions.

In accordance with the previous discussion, the court finds
that the defendant lacks standing to bring this claim.  The truck
belonged to Ramon Molina.  The defendant, as a passenger, failed to
assert any possessory or property interest in it.  As a result, the
defendant failed to demonstrate any expectation of privacy in the
truck.  Accordingly, the court must deny the defendant's motion in
its entirety.

MOTION TO COMPEL

The defendant seeks to have the government produce the
informants' files and their criminal histories.  The defendant
suggests that this information will be helpful in determining the
reliability of the informants.  The government has responded that
this information need not be disclosed because the defendant has
not met the burden under <u>Roviaro v. United States</u>, 353 U.S. 53
(1957) for the production of the requested materials.  The
government has argued that the defendant has not shown that this
information would contribute meaningfully to his defense because
the informants were not participants or witnesses to the crimes
charged.

The law regarding the disclosure of information concerning
informants, including their identities, is well-settled.  In
<u>Roviaro</u>, the Supreme Court determined that the government has the
privilege to withhold the identity of informants in order to
encourage "citizens to communicate their knowledge of the

commission of crimes to law-enforcement officials." <u>Roviaro</u>, 353 U.S. at 59.  However, this privilege is not limitless.  The Supreme Court has directed trial courts to balance "the public interest in protecting the flow of information necessary for effective law enforcement against the defendant's right to prepare his defense." <u>United States v. Luhan</u>, 530 F.Supp.2d 1224, 1262-63 (D.N.M. 2008)(citing <u>Roviaro</u>, 353 U.S. at 62.).  Whether disclosure is warranted depends on several factors, including "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, [and] the possible significance of the informer's testimony." <u>Id</u>.

In practice, the Tenth Circuit has not required disclosure "where the information sought 'would be merely cumulative,' or where the informer did not participate in the illegal transaction," <u>United States v. Mendoza-Salgado</u>, 964 F.2d 993, 1001 (10th Cir. 1992)(quoting <u>United States v. Scafe</u>, 822 F.2d 928, 933 (10th Cir. 1987))(other citations omitted), where the informant is not a participant or witness to the crime, <u>United States v. Brantley</u>, 986 F.2d 379, 383 (10th Cir. 1993), or where the informant is a mere tipster, <u>United States v. Wynne</u>, 993 F.2d 760, 766 (10th Cir. 1993).

Here, the informants were not participants or witnesses to the crime.  Rather, they were mere tipsters.  Under these circumstances, the court finds it unnecessary to order the disclosure of any information concerning the informants.

IT IS THEREFORE ORDERED that defendant's motion to suppress the fruits of illegal seizure (Doc. # 31) be hereby denied.

22

IT IS FURTHER ORDERED that defendant's motion to suppress fruits of search warrant and motion for <u>Franks</u> hearing (Doc. # 33) be hereby denied.

IT IS FURTHER ORDERED that defendant's motion to compel (Doc. # 35) be hereby denied.

**IT IS SO ORDERED.**

Dated this 13th day of November, 2012 at Topeka, Kansas.

S/Richard D. Rogers
UNITED STATES DISTRICT JUDGE